# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**FREDRICK SMITH**                                                                                      **PLAINTIFF**

**V.**                                                                    **CAUSE NO. 2:11CV120-MPM-JMV**

**BANK OF AMERICA, N.A., Et Al.,**                                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

### *Introduction*

Before the court is Defendants' Motion to Dismiss or Alternative Motion for Summary Judgment [# 39] filed March 15, 2012. After he failed to timely respond to Defendants' motion, by Order [# 43] dated August 10, 2012, the court notified *pro se* Plaintiff Frederick Smith that because Defendants had submitted matters outside the pleadings in support of the instant motion, the court would treat the motion as one for summary judgment. Additionally, the court explained the summary judgment procedure and granted Smith an additional fourteen days to respond to the motion. Despite this, Smith failed to respond.[1]

This lawsuit arises from a dispute between the parties concerning their respective duties and obligations under a loan and/or foreclosure of Smith's home located at 7601 Broken Hickory Drive, Walls, Mississippi. Smith is seeking injunctive and declaratory relief and money damages and expressly asserts causes of action of fraud, fraudulent misrepresentation, wrongful foreclosure,

---

[1]The district court is to construe liberally the briefs of *pro se* litigants and apply less stringent standards to them than to parties represented by counsel. *Andrade v. Gonzales,* 459 F.3d 538, 543 (5th Cir. 2006); *Grant v. Cuellar,* 59 F.3d 523, 524 (5th Cir. 1995). Nevertheless, a *pro se* party must still brief his issues. *Grant v. Cuellar,* 59 F.3d at 524; *see also Yohey v. Collins,* 985 F.2d 222, 225 (5th Cir. 1993) ("'Although [this Court] liberally construe[s] the briefs of *pro se* appellants, we also require that arguments must be briefed to be preserved.'"), *quoting Price v. Digital Equip. Corp.,* 846 F.2d 1026, 1028 (5th Cir. 1988). "[L]itigants, even if *pro se,* cannot oppose motions for summary judgment with unsworn statements." *Wilson v. Stalder,* 70 F.3d 1268 (5th Cir.1995).

slander of title, unlawful interference with possessory interest, and conflict of interest. By their motion, Defendants seek dismissal of each of these claims along with claims asserted under the TILA[2] and RICO[3]. Because Smith has failed to submit any proof in support of these claims and for other reasons set out more specifically below, Defendants are entitled to judgment on certain of these claims. Additionally, because additional putative claims in the *in forma pauperis* Complaint–not addressed by Defendants' motion for summary judgment–fail to state a claim on which relief may be granted, the Complaint will be dismissed in its entirety.

*Facts*

The Complaint alleges Smith resides on property located at 7601 Broken Hickory Drive, Walls, Mississippi (the "Property"), and that he executed a Deed of Trust to Lem Adams III, as Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for WMC Mortgage, which was filed on April 26, 2005, in the land records of DeSoto County in Book 2203 at Page 503. On May 19, 2011, ReconTrust notified Smith of a foreclosure sale of the Property scheduled for June 9, 2011. Smith filed the instant *in forma pauperis* Complaint on June 3, 2011. The Complaint alleges that Defendants must prove 1) the existence of the note, 2) that Smith signed the note, 3) that Defendants are owners or holders of the note, and 4) that a balance is due and owing on the note. Compl. ¶ 16. Smith requests injunctive relief "to stop the violation of the Foreclosure Act, the UCC, and the FDCA by Defendants," *id.* at ¶ 23; declaratory relief "to determine the actual status and validity of the loan, deed of truest, nominated beneficiaries, actual beneficiaries, loan servicers, [and] trustees instituting foreclosure proceedings and related matter,

---

[2]The Truth-in-Lending Act, 15 U.S.C. §§ 1601, *et seq.*

[3]The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*

2

*id.* at ¶ 27"; and money damages.

Additional facts are relevant to the court's determination herein; however, for the sake of economy, the court will recite these facts in the analysis section of this opinion.

### *Summary Judgment Standard*

Summary judgment shall be granted if the movant shows "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2).[4] Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual

---

[4]The amendments to FED. R. CIV. P. 56 became effective December 1, 2010. According to an excerpt from the Report of the Judicial Conference Committee on Rules of Practice and Procedure, the amendments to FED. R. CIV. P. 56 "are intended to improve the procedures for presenting and deciding summary judgment motions, to make the procedure more consistent across the districts, and to close the gap that has developed between the rule text and actual practice. *The . . . amendments are not intended to change the summary judgment standard or burdens.*" (emphasis added).

issues." *Id.* at 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. Conclusory allegations, *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990), unsubstantiated assertions, *Hopper v. Frank,* 16 F.3d 92, 96–97 (5th Cir. 1994), or the presence of a mere scintilla of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

*Analysis*

Defendants address seven causes of action that Smith has attempted to plead.[5] Four arise under Mississippi common law: 1) fraud, 2) fraudulent misrepresentation, 3) wrongful foreclosure, and 4) slander of title; and three arise under federal statutory law: 1) the Fourth and Fourteenth Amendments to the United States Constitution, 2) 15 U.S.C. § 1635(a) of the Truth-in-Lending Act ("TILA") and Regulation Z, 12 C.F.R. § 226.23, and 3) Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, et seq. The court will address each of these claims in turn.

**1. Fraud and Misrepresentation Claims**

---

[5]The court liberally construes pleadings made by *pro se* plaintiffs. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir.1993); *see also Haines v. Kerner,* 404 U.S. 519, 520 (1972) (noting that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers").

4

Defendants argue, *inter alia*, that they are entitled to summary judgment because Smith has failed to offer any proof in support of his fraud and fraudulent misrepresentation claims. The Court agrees.

For example, ¶ 29 of the Complaint states, "Defendants and all or them concealed material facts known to them but not to Plaintiffs regarding sales and assignments of the Note, transfers of the Note, and charges with the intent to defraud Plaintiffs." Additionally, ¶ 30 of the Complaint states in pertinent part:

> Defendants each of them made false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiff' [sic] reliance thereon, which the unsuspecting Plaintiff justifiably relied upon, resulting in general and special damages as well as mental distress.

The elements for fraud claims under Mississippi law are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992); *Shell Oil Co. v. Mills Oil Co., Inc.*, 717 F.2d 208, 214 (5th Cir. 1983) (citing *Gardner v. State*, 235 Miss. 119, 108 So. 2d 592, 594 (1959); *Holland v. People's Bank and Trust Co.*, 3 So. 3d 94, 100 (Miss. 2008). These elements must be proved by clear and convincing evidence. *Spragins,* 605 So. 2d at 780. Failure to prove any one of these elements is fatal to a fraud claim. *Id.* at 780-81. Because Smith has submitted no evidence whatsoever in support of his fraud and fraudulent misrepresentation claims, Defendants are entitled to summary judgment.

**2. Wrongful Foreclosure Claim**

In support of his wrongful foreclosure claim, Smith alleges in pertinent part the following:

36. Defendant MERS was . . . never . . . a Beneficiary of this loan or any other. MERS is solely a registration service for tracking Trust Deeds and mortgages and also the Notes. MERS records Trust Deeds in their name as a "nominee", with no actual ownership interest in the Loan . . . MERS is not a trustee and has no right to collect any payments on the Note, neither does MERS have any right to enforce the notes or to be a party in any Foreclosure proceedings. . . MERS . . . has unlawfully nominated a successive trustee.

37. Plaintiffs' [sic] alleges [sic] on information and belief that the loan was sold or transferred without notifying the Plaintiffs in writing. Therefore, the loan is void of legal rights to enforce it.

38. Plaintiffs allege that while MERS remain on title as a "nominee" for the Trust Deed and Note both are [sic] sold on several occasions afterward and ultimately bundled as a security and sold to a final investor.

39. None of the Defendants contacted Plaintiffs to discuss their financial situation. . . .

40. Thus, the Defendants . . . do not have the legal authority to foreclose on the Subject Property [sic].

Compl. ¶¶ 36-40.

Defendants argue that Smith's claim fails because the subject Property has not gone to foreclosure sale. Specifically, Defendants cite *Hutcherson v. JPMorgan Chase Bank*, N.A., No. 2:11cv154-KS-MTP, 2012 WL 37393, slip op. at *4 (S.D. Miss. Jan. 6, 2012) (citing *McKinley v. Lamar Bank*, 919 So. 2d 918, 930 (Miss. 2005)), for the proposition that "there must actually be a foreclosure before a plaintiff can assert a claim of wrongful foreclosure." Because the Complaint only alleges that a foreclosure sale was merely scheduled, and there is no proof in the record that Defendants actually completed the sale, Defendants are entitled to judgment on Smith's wrongful foreclosure claim.

Defendants argue alternatively that even if the Property had been foreclosed upon, under Mississippi law a plaintiff must prove the foreclosure was "attempted solely from a malicious desire to injure the mortgagor[] or . . . where the foreclosure is conducted negligently or in bad faith[] to his detriment." *Nat'l Mortg. Co. v. Williams*, 357 So. 2d 934, 935-36 (Miss. 1978). *See also Curlee v. Wells Fargo Home Mortg.*, No. 1:06cv219, 2007 WL 4287544, at *3 (N.D. Miss. Dec. 5, 2007) (unpublished). Smith has neither alleged nor presented any evidence that Defendants possessed any malice in foreclosing on the property. Nor does he claim a sale was conducted negligently or in bad faith.

Moreover, Defendants point out that a foreclosure is not wrongful if the borrower is in default (assuming the foreclosure is not conducted negligently or in bad faith). *See Neely v. Regions Bank, Inc.*, 262 Fed. Appx. 630, 632 (5th Cir. January 25, 2008). *See also EB, Inc. v. Allen*, 722 So. 2d 555, 561 (Miss. 1998) (finding that when a borrower defaults under the terms of his note, the lender has "full authority to foreclose on its deed of trust"). Once the right to foreclose is established, there cannot be a claim for wrongful foreclosure. *Merchants Nat. Bank, Vicksburg v. Southeastern Fire Ins. Co., Inc.*, 854 F.2d 100, 105 (5th Cir. 1988). So long as the lender complies with the terms of the note and Mississippi law–by following the statutory notice requirements and providing the borrower with an accounting of the sums necessary to cure the default–the foreclosure is valid. *See id.* (citing MISS. CODE ANN. §§ 89-1-55, 89-1-57, & 89-1-59); *West v. Nationwide Tr. Servs., Inc.* No. 1:09cv295, 2009 WL 4738171, at *3 (S.D. Miss. Dec. 4, 2009) (unpublished).

In this lawsuit, Smith has admitted, *inter alia*, that 1) he signed the Adjustable Rate Note, 2) he signed the Deed of Trust, 3) he received the loan proceeds to purchase the property, and 4)

he is delinquent on the loans that are the subject of this action.[6] Moreover, Smith neither alleges nor presents proof that Defendants violated the terms of any note or that they failed to notice the foreclosure sale in accordance with Mississippi statutory law. Ultimately, because Smith admits that he defaulted, makes no allegation and presents no proof that he attempted to cure, and does not allege or present proof that the lender violated the note or state law in conducting a foreclosure sale, his claim for wrongful foreclosure fails. *See Allen*, 722 So. 2d at 561; *Curlee v. Wells Fargo Home Mortg.*, No. 1:06cv219, 2007 WL 4287544, at *3 (N.D. Miss. Dec. 5, 2007) (unpublished).

Lastly, the court also agrees with Defendants' additional argument that Smith's standing allegations do not support a claim of wrongful foreclosure. Smith contends that none of the defendants are the owner and holder of the mortgage and note and, thus, have no right to commence a foreclosure action against him. The record before the court establishes that on January 26, 2010, MERS, as Nominee for WMC Mortgage Corp., executed a Corporation Assignment of Deed of Trust/Mortgage ("CADTM") to Wells Fargo, which was filed of record in the Office of the Chancery Clerk for DeSoto County, Mississippi on January 28, 2010 in Book 3129 at Page 244. The CADTM assigned "all beneficial interest under that certain deed of trust dated 04/14/2005, executed by Smith and Tasha L. Carodine . . . together with the note or notes therein described" from MERS to Wells Fargo. The Appointment of Substitute Trustee also identifies Wells Fargo. *Cf. Scruggs v. Northern*, 123 Miss. 169, 85 So. 89, 91 (Miss. 1920) (noting

---

[6]Smith failed to respond to Defendants' Requests for Admissions which asked him to make these admissions among others. The record indicates that Defendants properly served their requests for admissions along with other written discovery requests on Smith on January 27, 2012. *See* Document [# 33]. There is no record that Smith ever responded to Defendants' discovery requests. Accordingly, pursuant to FED. R. CIV. 36, the matters requested through Defendants' requests for admissions are deemed admitted and conclusively established, as there has been neither a request by Smith nor permission granted by the court for withdrawal of these admissions. *See also Dukes v. South Carolina Insurance Co.*, 770 F.2d 545, 548-49 (5th Cir. 1985) (holding if requests for admission concern an essential issue, the failure to respond to requests for admissions can lead to a grant of summary judgment against the non-responding party).

that the failure to record the assignment of a note secured by a deed of trust does not affect the validity of the assignee's substitution of trustee). These public records provided Smith with all of the information required under Mississippi law. *See Levy v. McGill*, 137 Fed. App'x 613, 617 (5th Cir. 2004) ("[W]e have found no law that requires a substitution of trustee instrument to demonstrate – in detail – how the secured party obtained its interest."). Moreover, courts have routinely rejected "show me the note" theories like Smith's. *See Emmons v. Capital One, N.A.*, slip copy, No. 1:11CV99-RHW, 2012 WL 773288, at *3 (S.D. Miss. March 6, 2012) (citations omitted). Accordingly, for all of the foregoing reasons, Defendants are entitled to judgment on Smith's wrongful foreclosure claim.

### 3. Slander of Title Claim

In ¶¶ 41 through 43 of the Complaint, Smith alleges that MERS "purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust or the agent of WMC Mortgage, wrongfully and without privilege . . . caused a Notice of Default to be recorded against the Subject Property" and "caused a Notice of Trustee's Sale to be recorded against the subject Property." In ¶ 44, Smith claims "Defendants, and all of them . . . were ever [sic] a trustee, beneficiary or asignee of any beneficiary of any Deed of Trust recorded against the Subject Property" and, therefore, "wrongfully caused the recording of the Notice of Default, Notice of Trustee's Sale and Trustee's Deed Upon Sale against the subject Property." Further, in ¶ 46 Smith asserts that "Defendants caused Plaintiff to suffer general and special damages."

In order to prevail on a slander of title claim, Smith must show Defendants "falsely and maliciously publish[ed] matter which [brought] in question or disparag[ed] the title to [the Property], thereby causing special damage to [him]." *See Jeanes–Kemp, LLC v. Johnson Controls, Inc.*, No. 1:09–CV–723 LG–RHW, 2010 WL 1667287, at *2 (S.D. Miss. April 23, 2010). *See also*

9

*Welford v. Dickerson*, 524 So.2d 331, 334 (Miss. 1988) (citing *Walley v. Hunt*, 54 So. 2d 393 (Miss. 1951) (In order for statement to support a slander of title claim, it must have been made both falsely and maliciously). Defendants state no documents were filed in relation to the Property other than the CADTM and the Appointment of Substitute Trustee. Moreover, Smith has presented no proof that filing of these documents constituted a false act. Nor does he present any facts that would give rise to an inference of malice on the part of Defendants.[7] Moreover, though Smith questions which company actually held title to his property, this falls short of evidence that the title was "disparaged." *See Kirby v. Bank of America, N.A.*, No. 2:09cv182-DCB-JMR, WL 1067944, at *8 (S.D. Miss. March 29, 2012). Finally, Smith has not put forth any proof that he incurred special damage as a consequence of Defendants' actions. *See id.* Accordingly, Defendants are entitled to judgment on this claim as well.

**4. Action for Damages for Unlawful Interference With Possessory Interest**[8]

Smith gives a section of the Complaint this heading, Compl. p. 11; however, the allegations that comprise this section appear to be completely impertinent to such a claim. For example, Smith alleges:

> [S]aid alleged promissory note was never executed by the Plaintiff, or if it was executed, has long since been lost or intentionally destroyed, or paid in full, or assigned to a third party, such that Defendants, and each of them, lacks or lacked standing to initiate a foreclosure proceeding against the subject property.

Compl. ¶ 48. Smith goes on to allege that "none of the alleged beneficiaries or representatives of

---

[7]"Malice, in its legal sense, means a wrongful act done intentionally, without just cause or excuse." *Harmon v. Regions Bank*, 961 So. 2d 693, 699 (Miss. 2001).

[8]In passing, Smith also makes the statement under this section of the Complaint that, "Defendants and all of them . . . knew or should have known that Banks and Financial Institutions cannot enter into mortgage agreements beyond a 5 year period. The Plaintiff's note was for a 30 year mortgage which by operation of law is fraudulent." For the reasons set out in Section seven of this opinion, *infra*, this claim–presumably asserted under the National Bank Act–should be dismissed.

the Beneficiary have the original note to prove that they are in fact the party authorized to conduct the foreclosure." *Id.* ¶ 49.

The court finds that in large part, Smith essentially rehashes the standing argument made in support of his wrongful foreclosure claim–a claim the court has already determined is meritless. Nevertheless, to the extent Smith attempts to assert a claim for unlawful interference with possessory interest, the court recognizes that pursuant to the Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects*,* against unreasonable searches and seizures, shall not be violated . . . ." U.S.CONST. amend. IV. A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113 (1984). However, any claim asserted by Smith for violation of his Fourth Amendment rights is without merit. Again, as discussed above, there is no proof that there has been an actual foreclosure on the subject Property. More importantly, there is no allegation or proof of state action on the part of the private entity Defendants. *See Morris v. Dillard Dep't Stores, Inc.,* 277 F.3d 743, 747-48 (5th Cir. 2001) (discussing the state action requirement)*.*

### 5. TILA Claim

The Complaint states:

69. Defendant's [sic] cause of action is barred in whole or in part due to Defendant's violation of state and federal Truth in Lending Acts.

70. Said violation, in addition to the fact that Plaintiff did not properly receive Notices [sic] Right to cancel, constitute violation of 15 U S C sec. 1635(a) and (b) and 12 CFR sec. 226.23(b) and are thus a legal basis for and legally extend Plaintiff right to exercise the remedy of rescission.

The TILA is a federal consumer protection statute that provides consumers with a cause

of action against creditors who fail to make required disclosures. 15 U.S.C. §§ 1601 *et seq.*; 12 C.F.R. § 226 ("Regulation Z").[9] The purpose of the TILA is to "promote the informed use of consumer credit by requiring disclosures about its terms and costs. 12 C.F.R. § 226.1(b). Regulations give consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes." *Id*.

Smith presumably contends Defendants did not provide the notice required by § 1635(a). Under the TILA, consumers who place a mortgage on their home have the right to rescind the contract for up to three days after the loan transaction is consummated. The statute provides as follows:

> (a) Disclosure of obligor's right to rescind
>
> Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject

---

[9]Regulation Z applies to each individual or business that offers or extends credit when four conditions are met:

(i) credit is offered or extended to consumers;

(ii) offering or extension of credit is done regularly;

(iii) credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and

(iv) credit is primarily for personal, family, or household purposes.

12 C.F.R. § 226.1(c).

> to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.
>
> (b) Return of money or property following rescission
>
> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. §§ 1635(a)-(b). Notice of the right to rescind must be given when the consumer signs the loan papers. *Id.*

In this case, documents in Smith's loan file show that he signed the Notices of Right to Cancel in conjunction with the loans that are the subject of this lawsuit. Additionally by his failure to respond to Defendants' requests for admissions, Smith has admitted that he signed the Notices of Right to Cancel and that he did not request cancellation of either of his loans with Defendants by the deadline of April 18, 2005. *See* Exhibit "C," Requests for Admission Nos. 9 and 10 [# 39]. Because there are no material fact issues regarding this claim, Defendants are entitled to judgment.

### 6. RICO Claim

In passing, the Complaint refers to the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. §§ 1961, *et seq*. These references come in the section of the Complaint addressing Defendants' standing to foreclose. The Complaint alleges:

> 72. On information and belief . . . all the defendants share in the illegal proceeds of the [consumer credit] transaction; conspired with each other to defraud the Plaintiff out of the proceeds of the loan; acted in concert to wrongfully deprive the Plaintiff of his residence; acted in concert and conspiracy to essentially steal the Plaintiffs [sic] home and/or convert the Plaintiff's home without providing Plaintiff reasonable equivalent value in exchange; and conducted and illegal enterprise within the meaning of RICO statute.
>
> . . .
>
> 74. On information and belief . . . the Defendants have engaged in two of [sic] more instances of racketeering activity involving different victims but utilizing the same methods and means.

Defendants argue that the Complaint fails to state a cause of action for any RICO violation and that, nevertheless, Smith has admitted that he has no evidence to establish an essential element of such a claim.

The three essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Delta Truck & Tractor, Inc. v. J.I. Case Company,* 855 F.2d 241, 242 (5th Cir. 1988), *cert. denied,* 489 U.S. 1079, 109 S. Ct. 1531, 103 L. Ed. 2d 836 (1989). The court agrees with Defendants that by his failure to respond to their requests for admissions, Smith has admitted that he has "no evidence that the Defendants are or were involved in an enterprise as alleged in Paragraph Nos. 72-74" of the Complaint. *See* Exhibit "C" Request For Admission No. 18 [# 39]. Accordingly, Defendants are entitled to judgment on this claim.

### 7. Other Putative Claims

First, though Defendants refer to Smith's "conflict of interest" claim in their brief, Def.'s

Summ. J. Br. p. 2., they fail to offer any argument in support of its dismissal. Additionally, the court finds several other scattered references to statutory provisions in the Complaint, including–but not limited to–references to the "Foreclosure Act" and the "FDCA," Compl. ¶¶ 22-23; the "National Currency Act," *id*. at ¶ 51; "Public Law Volume 13 of the 39th Congress Stat 99–118," *id*.; "Mississippi Code Title 75 Article 3 Negotiable Instruments and Article 8 Investments Securities," *id*.; and the "Uniform Commercial Code section [sic] 3-305(a)," *id*. at ¶ 50. Defendants do not address these references in their motion for summary judgment. Nevertheless, the court finds that to the extent any of these references can be construed as asserting claims, the claims should be dismissed.

Title 28 U.S.C. § 1915(e) by its very terms authorizes the Court to *sua sponte* dismiss a case filed by a plaintiff proceeding *in forma pauperis* upon a determination that the complaint or any claim therein is frivolous or malicious, that fails to state a claim for which relief can be granted, or that seeks monetary relief against an immune defendant. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176–77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id*., 127 S. Ct. at 1965. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Twombly,* 127 S. Ct. at 1964–65. The court must accept all

well-pleaded facts as true and view the allegations in the light most favorable to the plaintiff. *See In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205–06 (5th Cir. 2007), *cert. denied sub nom., Xavier Univ. of Louisiana v. Travelers Cas. Property Co. of America,* 552 U.S. 1182, 128 S. Ct. 1230, 170 L. Ed. 2d 63 (2008).

The Court will only discuss those putative claims it believes are worth addressing. First, Smith asserts a putative claim of "Conflict of Interest." Compl. pp. 14-17. For the most part, the allegations contained in this section of the Complaint rehash Smith's contention that none of the defendants had standing or authority to foreclose on the property. However, Smith further alleges that "MERS acts as a Nominee for more than one principal in the same transaction, and conceals the identity therefore if a Nominee is the same as an agent MERS cannot act as an agent for multiple Banks, insurance and title companies and Mortgage Companies because of a serious conflict of interest." *Id*. at ¶ 58. Because Smith offers no specific facts in support of these vague and conclusory allegations, nor points the court to any legal authority, his "conflict of interest" claim should be dismissed.

Next, with regard to Smith's references to the "Foreclosure Act" and the "FDCA,"[10] he does not cite or make reference to any particular provisions of these statutes. Compl. ¶¶ 18, 22, 23. Nevertheless, to the extent Smith intends to assert a claim under the Protecting Tenants at Foreclosure Act of 2009, Public Law 111-22, he fails because the Act does not create a private right of action. *See Patriot Bank v. Monroe*, No. 4:11CV626, 2011 WL 5105755, at *1 (E.D. Tex. Oct. 27, 2011) (citing *Wells Fargo Bank v. Lapeen*, No. 11-01932-LB, 2011 WL 2194117 (N.D.

---

[10]This acronym is commonly used to refer to the Federal Food, Drug, and Cosmetic Act of 1938 which, of course, is completely irrelevant to the allegations asserted in the Complaint. Accordingly, the court liberally construes this reference as a reference to the Fair Debt Collection Practices Act.

16

Cal. June 6, 2011).

Nor does Smith state a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. The FDCPA applies only to persons who "use [ ] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collect [ ] or attempt [ ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Mortgage lenders are not "debt collectors" within the meaning of the FDCPA. *See Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985) (definition of "debt collector" does not include mortgage servicing companies); *Williams v. Countrywide Home Loans, Inc.,* 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007), *aff'd,* 269 Fed. Appx. 523 (5th Cir. 2008) (mortgage companies collecting debts are not "debt collectors"). *See also, Kaltenbach v. Richards*, 464 F.3d 524, 527 n. 3 (5th Cir. 2006) (stating that the Fifth Circuit has "at least implicitly recognized that a foreclosure is not *per se* an FDCPA debt collection"). Accordingly, these putative "claims" should be dismissed.

Next, the Complaint presumably makes various references to the National Currency Act–now also known as the National Bank Act–and asserts that "Federal Reserve notes are not money by law." For example, the Complaint alleges:

> Defendants and all of them violated federal law in that Banks or Financial Institutions cannot, [sic] loan the capital stock of their directors, nor can they loan the money of their depositors, and they can only loan money pursuant to Public Law Volume 13 of the 39th Congress Stat 99-118. Defendants and all of them have not followed any of the provisions of this monetary law of the United States of America.

Compl. at ¶ 52. Additionally, the Complaint states, "Defendants and all of them . . . knew or should have known that Banks and Financial Institutions cannot enter into mortgage agreements

17

beyond a 5 year period. The Plaintiff's note was for a 30 year mortgage which by operation of law is fraudulent."

The court cannot discern which sections of the National Currency Act Smith is invoking based on the convoluted allegations contained in the Complaint. Additionally, Smith provides no case law or supporting facts to show that he has a private right to sue Defendants under the National Currency Act. Thus, the court should dismiss Smith's claims to the extent they arise out of a violation of the National Currency Act.

Furthermore, the theory that Federal Reserve notes are not legal tender is meritless as a matter of law. *See Julliard v. Greenman*, 110 U.S. 421, 447-48 (1884) (holding that Congress has the power of making the notes of the United States a legal tender in payment of private debts, and that such power is not restricted by the fact that its exercise may affect the value of private contracts). *See also Foret v. Wilson,* 725 F.2d 254 (5th Cir. 1984) (dismissing plaintiff's argument that only gold and silver coin may be constituted legal tender by the United States).

Finally, the Complaint alleges:

> Defendant(s) . . . violated Mississippi code Title 75 and the Uniform Commercial Code section 3-305(a), in that they materially altered a contract without the knowledge or consent of the Plaintiff, committed Fraud in the factum, rendering the transaction illegal, and thus this transaction stands as fraud which induced Plaintiff to enter the contract upon terms and conditions other than agreed upon. The Law is expressed as, "§ 3-305. Defense and claims in recoupment. [sic]

Rule 9(b) of the *Federal Rules of Civil Procedure* provides that allegations of fraud must be stated with particularity with regard to the circumstances constituting the fraud. Here, Smith has failed to state the circumstances surrounding his fraud in the factum claim with the particularity required under Rule 9(b).

*Conclusion*

For the foregoing reasons, Defendants' motion for summary judgment [# 39] is granted, and Smith's wrongful foreclosure, slander of title, fraud, fraudulent misrepresentation, unlawful interference with possessory interest, TILA, and RICO claims are dismissed with prejudice. With respect to the remaining putative claims asserted in the Complaint, **Plaintiff shall within fourteen (14) days of this date, SHOW CAUSE why said claims should not be dismissed with prejudice for failure to state a claim.**

**SO ORDERED** this, the 20th day of September, 2012.

                                            **/s/ MICHAEL P. MILLS**
                                            **CHIEF JUDGE**
                                            **UNITED STATES DISTRICT COURT**
                                            **NORTHERN DISTRICT OF MISSISSIPPI**